In re SOMBRERO REEF CLUB, INC., d/b/a Latitude 24° Club Resort, and d/b/a Latitude 24° Vacation Club, a Florida Corporation, Debtor.

KINGSAIL CORPORATION OF MARATHON, INC., Plaintiff,

v.

SOMBRERO REEF CLUB, INC., d/b/a Latitude 24° Club Resort, and d/b/a Latitude 24° Vacation Club, a Florida Corporation, Defendant.

Bankruptcy No. 80–01266–BKC–JAG. Adv. No. 80–0273–BKC–JAG–A.

United States Bankruptcy Court, S. D. Florida.

Dec. 12, 1980.

Law Office Samuel L. Heller, P. A., Fort Lauderdale, Fla., for debtor.

A. M. Schwitalla, c/o Schwitalla & Lombana, Coral Gables, Fla., for plaintiff.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

In this adversary proceeding the plaintiff is the holder of the third mortgage on real property owned by the defendant–debtor, a marina–resort motel in Marathon on the Florida keys which is the sole substantial asset of the debtor. Plaintiff seeks to have the court modify the automatic stay by permitting it to complete the foreclosure action in the State of Florida court in which a final judgment of foreclosure had been entered and in which a foreclosure sale was pending at the time the defendant–debtor filed its petition under chapter 11 of the Bankruptcy Code in this court.

The trial of this adversary proceeding was commenced on October 24, 1980 and concluded on November 18, 1980 pursuant to the order continuing automatic stay entered herein on October 27, 1980 (C. P. No. 6). (During the pendency of this adversary proceeding, the defendant–debtor filed its motion for authorization to borrow money secured by estate assets in the main proceeding Case No. 80–01266–BKC–JAG, hearings on which were held on October 28, 1980, November 3, 1980 and November 6, 1980, resulting in an order denying the motion on December 2, 1980.)

The amount of the lien to which the plaintiff herein is entitled as a result of its mortgage was $611,692.28 as per the final judgment of foreclosure entered in the state court action on September 2, 1980 (Plaintiff's Exhibit No. 1). This included principal, interest, advances, taxes, various costs and attorneys' fees up to that date. The foreclosure sale was set for September 30, 1980 but was stayed by the filing of the petition under chapter 11 in this court on September 30, 1980.

The debtor–defendant operated the Sombrero Reef resort and marina as a motel–marina resort from June, 1975 until October, 1977 when the debtor began a time–sharing sales program which continued until April, 1979 when that program was abandoned and the original motel–marina resort use was reinstituted. The debtor has been actively trying to sell the subject property for approximately one and one–half years and has had the property listed with a broker for over a year without any contract of sale having been forthcoming. At no time has the debtor operated the property at a profit.

The plaintiff's position as third mortgagee places it behind the Dania Bank which has a first lien of approximately $453,000 and the First National Bank of Marathon which has a second lien of approximately $53,000. Therefore, the total liens of the plaintiff and those superior to it, including accrued interest since September 2, 1980

and 1980 taxes which have now become due and payable, is in excess of $1,120,000 and is increasing on a daily basis by reason of further interest accrual on all outstanding balances.

The defendant–debtor offered expert opinion evidence through its appraiser, Henry R. Bondarenko, who testified that the fair market value of the property as of September 4, 1980 was $3,500,000. This same appraiser had found that the value of the property in September, 1976 was $2,300,000 but the weight of this opinion suffers from the evidence that the defendant–debtor paid only approximately $1,400,-000 including real estate commission when the property was purchased on June 30, 1975 (Defendant's Exhibit No. 5). The court feels that Mr. Bondarenko's evaluation, which was calculated using the income approach to value, was based upon a number of unrealistic assumptions including, among others, an income stream far in excess of any that had ever been realized by the operation and the availability of more rentable units than actually existed.

The plaintiff's expert witness, Alan G. Schmitt, testified that in his opinion the fair market value as of November 1, 1980 was $1,460,000 in its present condition. (Both parties admit that the property is in need of much repair and refurbishing which would cost from $100,000 to $200,000.)

The defendant–debtor has conceded that its only hope for a successful plan of reorganization depends upon a firm and realistic opportunity to sell the property at or about $3,500,000 which would include the reinstatement of the existing mortgages by curing all defaults to date. In addition to the three mortgages including the plaintiff's, hereinabove referred to, there is a fourth mortgage held by one Lora Jayne Frame. The unprofitable operation of the property has been sustained only by the accumulation of additional unsecured indebtedness.

There is no reasonable cause to believe that the debtor will be able to operate at a profit pending the sale of the property.

By reason of the evidence herein, the court concludes that the plaintiff is not receiving adequate protection under 11 U.S.C. 362(d)(1) and therefore is entitled to a modification of the stay unless the debtor complies with the conditions set forth below and as incorporated in the separate Final Judgment being entered in this case.

The court finds that in order for the plaintiff to have adequate protection, the defendant--debtor should pay to it all amounts paid by the plaintiff to the first and second mortgagees subsequent to September 30, 1980 and to deposit with the court the first and second mortgage accruals for October, November and December, 1980 plus one–fourth of the annual taxes and insurance on or before noon on December 31, 1980; or, in the alternative, that the defendant--debtor shall have submitted a firm, realistic and valid proposal for sale of the property acceptable to and approved by the court prior to that date; and further provided that a plan of reorganization in which all existing mortgages will be brought current as a result of said sale is filed with the court by January 12, 1981.

In addition, the defendant–debtor shall deposit with the court on the first day of each month a sum of cash equivalent to the monthly prorata accrual of taxes, insurance premiums and first and second mortgage obligations commencing on January 1, 1981 and on the first of each month thereafter.

The failure to abide by any of the requirements set forth herein, as incorporated in the Final Judgment being entered herewith shall, upon presentation of prima facie evidence of such failure by the plaintiff or other interested party, result in an order modifying the stay to the extent necessary to permit the plaintiff to proceed with its state court foreclosure action.

As is required by B. R. 921(a), a separate Final Judgment is being entered continuing the automatic stay upon condition that the debtor--defendant comply with the requirements imposed upon it herein.